UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cr-40026-JES-JEH-1 |
| | ) | |
| ANTHONY TONY GAY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The United States has filed a Motion (Doc. 67) to Permit DNA Testing and Allow Consumption of DNA Swabs and Defendant has filed a Response (Doc. 71). This Order follows.

On May 31, 2020, Defendant Gay was arrested for being a felon in possession of a firearm after a foot pursuit by police following a traffic stop. Doc. 71, at 1. After the foot chase, an officer had recovered a loaded Glock .45 ACP pistol, which was allegedly along Defendant's footpath during the pursuit. *Id*. That firearm was swabbed for touch DNA and now the United States seeks to test those two swabs. *Id*. Such testing may consume both swabs, so Defendant objects to the testing. *Id*.

In its Motion, the United States asserts testing and potentially consuming the DNA swabs in their entirety would not violate the Due Process Clause or the Federal Rules of Criminal Procedure, because it has a good faith basis and scientific reason for potentially consuming the swabs and the DNA swabs are not material evidence at this time. Doc. 67, at 4-7. In his Response, Defendant argues the United States has failed to cite binding precedent to support its request to potentially consume the samples. Doc. 71, at 1-2. Then, Defendant attacks the language the employee from the ATF laboratory uses in his sworn declaration regarding "feasibility" versus "advisability." *Id*. at 2.

In support of its Motion, the United States relies on *United States v. Anderson*, 169 F. Supp. 3d 60, 65 (D.D.C. 2016) and *United States v. Kingsbury*, 317 F. Supp. 3d 476, 478 (D.D.C. 2018). Doc. 67, at 4. Although the United States does not cite binding Seventh Circuit precedent, the Courts finds the reasoning in *Anderson* and *Kingsbury* persuasive.

These cases start with the premise from *Brady v. Maryland*, 373 U.S. 83 (1963), that "[a] defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *Anderson*, 169 F. Supp. at 64 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Kingsbury*, 317 F. Supp. 3d at 478. These cases also rely on *Arizona v. Youngblood*, 488 U.S. 51 (1988), for the holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially* useful evidence does not constitute a denial of due process of law." *Anderson*, 169 F. Supp. at 64 (quoting *Youngblood*, 488 U.S. at 58) (emphasis added); *see also Kingsbury*, 317 F. Supp. 3d at 478.

In *Anderson*, the government sought authorization for a laboratory to consume the entire sample taken from a firearm if the laboratory deemed it necessary. 169 F. Supp. at 63. It was the laboratory's policy to preserve all DNA extracts that remain after the swabs have been consumed and the government represented that any remaining extract would be made available to the defense upon request. *Id.* at 66. The district court held "that the due process clause and the Fifth Amendment do not require the government to preserve half of the swabs at issue prior to extracting any DNA evidence because it is not clear that the swabs, in fact, are material evidence." *Id.* at 65. Because the government sought to test the swabs to determine whether there is DNA present and, if so, to determine whether any DNA present can be matched or not matched to the defendant's DNA profile, the swabs were neither exculpatory nor inculpatory

evidence at that time. *Id.* Additionally, the court held the plain language of Federal Rule of Criminal Procedure 16 did not require the government to preserve half the swabs prior to testing because it was unclear, at the time, whether the swabs are material to preparing the defense, whether the government intended to use any DNA evidence during its case-in-chief, or if any DNA would belong to the defendant. *Id.* at 65-66.

Likewise, in *Kingsbury*, another judge in the district court of D.C. rejected swab-splitting in finding neither the Due Process Clause of the Fifth Amendment nor Rule 16 prohibited consuming the entire sample at issue. 317 F. Supp. 3d at 478-79 (citing *United States v. Quinones*, 236 F. Supp. 3d 375, 376 (D.D.C. 2017); *Anderson*, 169 F. Supp. 3d at 65; *United States v. Haight*, 153 F. Supp. 3d 240, 241 (D.D.C. 2016)). The court relied on *Anderson* for the proposition that it is impossible to know whether the swabs are exculpatory, material, or discoverable under Rule 16 until they are tested. *Id.* It also noted the government does not act in "bad faith" by destroying evidence in the testing process if there is an "unrebutted explanation of the scientific necessity of consuming the swabs." *Id.* (citing *Haight*, 153 F. Supp. 3d at 241). In *Haight*, another judge in the D.C. district court relied on *Youngblood*, 488 U.S. at 58, for the proposition that a failure to preserve potentially useful evidence does not violate due process of law unless there is evidence of bad faith. *Haight*, 153 F. Supp. 3d at 241. The court then collected cases from district courts including North Carolina and Kansas, which held that the government does not act in bad faith if there "is a legitimate scientific reason for doing so." *Id.* Thus, the court held relying on a DNA expert that attested to the need to potentially consume an entire DNA sample was a sufficient basis, which obviated any bad faith finding. *Id.*

Here, like in the cases discussed above, the two DNA swabs have not been tested, therefore, the evidence is not material because it is impossible to know whether the results will

3

be inculpatory, exculpatory, or inconclusive. As to the potential usefulness of the evidence, the United States has provided a declaration from Todd Bille of the ATF Laboratory confirming there is a legitimate scientific reason for potentially consuming the entire sample. Doc. 67, at 6 (citing Bille Declaration at ¶ 3). This declaration demonstrates the United States has a good faith reason and Defendant has not offered any other evidence of bad faith. Further, Defendant still has meaningful opportunities to challenge the results of the test because there is still a potential that not all of the material will be consumed, Defendant can request discovery on the results of the testing, and he can cross examine on the testing methods. The United States has also indicated that the analyst's associated bench notes and test documentation can also be made available to Defendant if he requests it. *Id.* at 7. Thus, based on the United States' Motion and Defendant's Response, the Court sees no issue in allowing the United States to test and potentially consume the DNA samples.

## CONCLUSION

For the reasons set forth above, the United States' Motion (Doc. 67) is GRANTED.

Signed on this 17 day of August, 2021.

s/James E. Shadid

James E. Shadid
United States District Judge