

E-FILED
Tuesday, 17 August, 2021 11:26:31 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

FILED

AUG 1 7 2021

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA**
              **Plaintiff**                                            **20-cr-40026**

      **V**

**ANTHONY GAY**
          **Defendant**

### MOTION TO SUPPRESS EVIDENCE (AMMUNITION CHARGE)

Now comes defendant, Anthony Gay, pursuant to 12 (B) (3) Federal Rules of Criminal procedure and state as follows:

(1) On June 14, 2020 officer Mendoza was dispatched at 1324 hours (1:24 pm) to American Motor Inn hotel (see bates 000260). Upon arrival officer Mendoza was informed by Pritesh Patel (hotel manager) that defendant, Anthony Gay, had left his property in the room (133#) that defendant, Anthony Gay, had rented out. Pritesh Patel further indicated that he found ammunition in the room (000260). Pritesh Patel provided officer Mendoza with a copy of the invoice/rental agreement (000260). The invoice/rental agreement indicates: Guest: 2; 22 nights; arrival 5-11-2020; check in: 5-10-2020; check out: 6-1-2020; Rate:$35.71; Room: 749.94; Taxes: 90.06; Total: 840.00; Payment: 840.00 (bates 000260). Pritesh Patel further indicated that defendant, Anthony Gay, called from jail about clearing the room, Pritesh Patel indicated that he would give defendant, Anthony Gay, two weeks to clear the room (000260; also see Government Doc 34#).

(2) The Fourth Amendment prohibits "unreasonable searches and seizure" by law enforcement, U.S. Const. Amend. IV, and a hotel room may be "the object of Fourth Amendment protection as much as a home or an office." Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 17 L. Ed. 2d 374 (1966); see also Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). To have standing to challenge the search of a hotel room, the guest must show (1) that he had "an actual (subjective) expectation of privacy" in the room and (2) that this expectation was "one that society is prepared to recognize as 'reasonable.' " Smith v Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (internal quotation marks omitted).

(3) The defendant, Anthony Gay had a subjective expectation of privacy and that expectation of privacy was reasonable.

        The starting point is that a hotel guest has a periodic right to occupy a room, not a permanent one. See United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997); United States v. Huffines, 967 F.2d 314, 318 (9th Cir. 1992); United States v. Larson, 760 F.2d 852, 854-55 (8th Cir. 1985). Yet a hotel's practices and communications with the guest may modify the general rule. "The policies and practices of a hotel may result in the extension past checkout time of a

defendant's reasonable expectation of privacy." United States v. Dorais, 241 F.3d 1124, 1129-30 (9th Cir.2001); see also United States v. Gill, 16 Fed. Appx. 850, 854 (10th Cir 2001); United States v. Kitchens, 114 F.3d 29, 31-32 (4th Cir. 1997); United States v. Owens, 782 F.2d 146, 149-150 (10th Cir. 1986); Larson, 760 F.2d at 855; United States V. Watson, 783 F. Supp 258, 263 (E.D. Va 1992); People v. Hardy, 77 A.D.3d 133, 907 N.Y.S. 2d 244, 248 (N.Y.App. Div.2010)

In the case at bar, Pritesh Patel indicated to officer Mendoza that he had given defendant, Anthony Gay, two weeks to clear the room. BY PATEL'S OWN ACCOUNT defendant's hotel expiration date was June 1,2020. Two weeks from June 1, 2020 is June 15, 2020. Officer Mendoza should have known that the two weeks had not expired and he required a warrant to search or seize anything out of the defendant's room.

(3)When a warrantless search occurs, the government bears the burden of showing that the search was justified. Arkansas v. Sanders 442 U.S. 753, 760 (1979) ("The few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and 'the burden is on those seeking exemption to show the need for it." (quoting United States v. Jeffries, 342 U.S. 48, 51)))

(4) This search was not justified. The defendant was locked up. They both were aware of this. In addition, this illegal search and seizure was in the midst of a pandemic.

(5) During this illegal search and seizure we were living in the midst of an extreme, unprecedented worldwide health emergency caused by the rapid spread of the coronavirus, Covid 19. The World Health Organization declared Covid 19 to be a global pandemic (Rolling updates on Coronavirus Disease (covid 19), World Health Organization, https://www.who.int/emergencies/diseases/novel-Covid-19-2019/events-as-they-happen). On March 9, 2020 Illinois Governor J.B. Pritzker issued a proclamation declaring a disaster in the state of Illinois (Gubernational Disaster Proclamation, https://www2. illinois.gov/sites/gov/sites/gov/Documents/approved %20-%20 coronavirus % Disaster %Proc %Word.pdf. On March 13, 2020, President Trump declared a national emergency (Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (Covid 19) Outbreak (Mar 13, 2020), available at https://www.whitehouse.gov/presidential-actions/proclamations-declaring-national-emergency-concerning-novel-coronavirus-disease-covid 19-outbreak

Covid 19 is a particularly contagious disease. A study showed that the virus can survive for up to three hours in the air, four hours on copper, up to twenty-four hours on cardboard, and up to to three days on plastic and stainless steel (novel coronavirus can live on some surfaces for up to 3 days, new test shows, Time https://time.com/5801278/coronavirus-stays-on-surfaces-days-tests/

Indeed a study of an early cluster of Covid 19 cases in Wuhan, China revealed the dangers of indirect transmission resulting from infected people contaminating common surfaces- in the

study, it was a communal mall bathroom (Jing Cai J,et al, Indirect Virus transmission in Cluster
of covid-19 cases, Wenzhou, China, 2020, Emerg Infect Dis. (2020), available at
http://wwwnc.cdc.gov/eid/article/26/6/20-0412 article)

(6) As a result of the pandemic the governor gave an executive order that prevented evictions
including hotels (see executive orders 2020-10, 2020-30 and 2020-39).

(7)In addition, on May 23, 2020, the Rock Island police illegally seized the defendant's hotel key,
restricting the defendant's access to his own hotel room and giving the Rock Island police total
access to the defendant's hotel room.

(8) As far as the record reveals, the officers might easily have secured the premises and sought
a warrant permitting them to enter. See Illinois v. McArthur, 531 U.S. 326 (2001).Thus, the
totality of the circumstances present here do not suffice to justify abandoning the Fourth
Amendment's traditional hostility to police entry without a warrant.

(10) Wherefore, Defendant request the entry of an order suppressing all items of physical
evidence which were seized from defendant.s hotel room at American Motor Inn (133#) and any
and all pictures taken of the defendant's room and/or property be suppressed.

**RESPECTFULLY SUBMITTED**
**ANTHONY GAY**
**1228 -14thstreet**
**Rock Island, il 61201**


**CERTIFICATE OF SERVICE**
This certifies that I sent the above instrument and affidavit to the clerk of court on ███████via
mail

**RESPECTFULLY SUBMITTED**
**ANTHONY GAY**
**1228-14thstreet**
**Rock Island, Il 61201**

**STATE OF ILLINOIS** )
)
)

**County of Rock Island**

### AFFIDAVIT

I, Anthony Gay, being first duly sworn, on oath, depose and state as follows:

(1)  That I am the defendant in the case of United States v. Anthony Tony Gay, CD-IL case no. 20- 40026, that is pending before the United States District Court for the Central District of Illinois, Rock Island Division, the Hon. James Shadid, United States District Judge, presiding.

(2) That I make this affidavit in support of the motion to suppress evidence filed on my behalf, pursuant to Simmons v. United States, 390 U.S. 377, 88 S.Ct 967, 19 L. Ed 2d 1247 (1968), which holds that "when a defendant testifies in support of a motion to suppress evidence on fourth amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

(3) That on or about May 11, 2020, I paid $70.00 dollars to rent a hotel room (133#) at American Motor Inn for one night.

(4) That on May 12, 13, 14, 15, 16,17, 2020, I paid $60.00 dollars a night to rent hotel room 133# at American Motor Inn.

(5) That I rented room 133# at American Motor Inn up until or about June 1, 2020

(6) After my hotel agreement expired the hotel manager Pritesh Patel indicated that I would be given two weeks to remove my property from the room.

(7) On or about March 20, 2020, Governor J.B. Pritzker enacted Executive Order 2020 -10, which prevented eviction and prevented law enforcement from enforcing orders of eviction. This executive order was extended in subsequent orders including Executive Order 2020-39 which was in effect on June 14, 2020.

Anthony Gay



Subscribed and Sworn to before me

This ___9___ day of ~~Sept 2021~~ 2021

Aug

NOTARY PUBLIC

DORIS J QUIGLEY
OFFICIAL SEAL
NOTARY
PUBLIC
STATE OF
ILLINOIS
Notary Public - State of Illinois
My Commission Expires
April 27, 2025

➕ View up to date information on how Illinois is handling the Coronavirus Disease 2019 (COVID-19) from the State of Illinois Coronavirus Response Site (https://coronavirus.illinois.gov/)

Illinois.gov (/)

# Executive Order 2020-10

**March 20, 2020**

EXECUTIVE ORDER 2020-10

### EXECUTIVE ORDER IN RESPONSE TO COVID-19
### (COVID-19 EXECUTIVE ORDER NO. 8)

**WHEREAS**, I, JB Pritzker, Governor of Illinois, declared all counties in the State of Illinois as a disaster area on March 9, 2020 (Gubernatorial Disaster Proclamation) in response to the outbreak of Coronavirus Disease 2019 (COVID-19 (Coronavirus Disease 2019)); and,

**WHEREAS**, in a short period of time, COVID-19 (Coronavirus Disease 2019) has rapidly spread throughout Illinois, necessitating updated and more stringent guidance from federal, state, and local public health officials; and,

**WHEREAS**, for the preservation of public health and safety throughout the entire State of Illinois, and to ensure that our healthcare delivery system is capable of serving those who are sick, I find it necessary to take additional measures consistent with public health guidance to slow and stop the spread of COVID-19 (Coronavirus Disease 2019);

**WHEREAS**, COVID-19 (Coronavirus Disease 2019) has resulted in significant economic impact, including loss of income and wages, that threaten to undermine housing security and stability;

**WHEREAS**, the enforcement of eviction orders for residential premises is contrary to the interest of preserving public health and ensuring that individuals remain in their homes during this public health emergency;

**THEREFORE**, by the powers vested in me as the Governor of the State of Illinois, and pursuant to Sections 7(1), 7(2), 7(8), 7(10), and 7(12) of the Illinois Emergency Management Agency Act, 20 ILCS (Illinois Compiled Statutes) 3305, and consistent with the powers in public health laws, I hereby order the following, effective March 21, 2020 at 5:00 pm and for the remainder of the duration of the Gubernatorial Disaster Proclamation, which currently extends through April 7, 2020:

Section 1. Stay at Home; Social Distancing Requirements; and Essential Businesses and Operations

1. **Stay at home or place of residence**. With exceptions as outlined below, all individuals currently living within the State of Illinois are ordered to stay at home or at their place of residence except as allowed in this Executive Order. To the extent individuals are using shared or outdoor spaces when outside their residence, they must at all times and as much as reasonably possible maintain social distancing of at least six feet from any other person, consistent with the Social Distancing Requirements set forth in this Executive Order. All persons may leave their homes or place of residence only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations, all as defined

below.

Individuals experiencing homelessness are exempt from this directive, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to make such shelter available as soon as possible and to the maximum extent practicable (and to use in their operation COVID-19 (Coronavirus Disease 2019) risk mitigation practices recommended by the U.S. Centers for Disease Control and Prevention (CDC (Centers for Disease Control and Prevention)) and the Illinois Department of Public Health (IDPH (Illinois Department of Public Health))). Individuals whose residences are unsafe or become unsafe, such as victims of domestic violence, are permitted and urged to leave their home and stay at a safe alternative location. For purposes of this Executive Order, homes or residences include hotels, motels, shared rental units, shelters, and similar facilities.

2. **Non-essential business and operations must cease**. All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below. For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home).

All Essential Businesses and Operations are encouraged to remain open. To the greatest extent feasible, Essential Businesses and Operations shall comply with Social Distancing Requirements as defined in this Executive Order, including by maintaining six-foot social distancing for both employees and members of the public at all times, including, but not limited to, when any customers are standing in line.

3. **Prohibited activities**. All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes permitted by this Executive Order. Pursuant to current guidance from the CDC (Centers for Disease Control and Prevention), any gathering of more than ten people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence.

All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed to the public.

This Executive Order supersedes Section 2 of Executive Order 2020-07 (COVID-19 (Coronavirus Disease 2019) Executive Order No. 5), which prohibited gatherings of 50 people or more.

4. **Prohibited and permitted travel**. All travel, including, but not limited to, travel by automobile, motorcycle, scooter, bicycle, train, plane, or public transit, except Essential Travel and Essential Activities as defined herein, is prohibited. People riding on public transit must comply with Social Distancing Requirements to the greatest extent feasible. This Executive Order allows travel into or out of the State to maintain Essential Businesses and Operations and Minimum Basic Operations.

5. **Leaving the home for essential activities is permitted**. For purposes of this Executive Order, individuals may leave their residence only to perform any of the following Essential Activities:

   a. For health and safety. To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (including, but not limited to, pets), such as, by way of example only and without limitation, seeking emergency services, obtaining medical supplies or medication, or visiting a health care professional.

   b. For necessary supplies and services. To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, groceries and food, household consumer products, supplies they need to work from home, and products necessary to maintain the safety, sanitation, and essential operation of residences.

   c. For outdoor activity. To engage in outdoor activity, provided the individuals comply with Social Distancing Requirements, as defined below, such as, by way of example and without limitation,

walking, hiking, running, or biking. Individuals may go to public parks and open outdoor recreation areas. However, playgrounds may increase spread of COVID-19 (Coronavirus Disease 2019), and therefore shall be closed.

  d. For certain types of work. To perform work providing essential products and services at Essential Businesses or Operations (which, as defined below, includes Healthcare and Public Health Operations, Human Services Operations, Essential Governmental Functions, and Essential Infrastructure) or to otherwise carry out activities specifically permitted in this Executive Order, including Minimum Basic Operations.

  e. To take care of others. To care for a family member, friend, or pet in another household, and to transport family members, friends, or pets as allowed by this Executive Order.

6. **Elderly people and those who are vulnerable as a result of illness should take additional precautions.** People at high risk of severe illness from COVID-19 (Coronavirus Disease 2019), including elderly people and those who are sick, are urged to stay in their residence to the extent possible except as necessary to seek medical care. Nothing in this Executive Order prevents the Illinois Department of Public Health or local public health departments from issuing and enforcing isolation and quarantine orders pursuant to the Department of Public Health Act, 20 ILCS (Illinois Compiled Statutes) 2305.

7. **Healthcare and Public Health Operations.** For purposes of this Executive Order, individuals may leave their residence to work for or obtain services through Healthcare and Public Health Operations. Healthcare and Public Health Operations includes, but is not limited to: hospitals; clinics; dental offices; pharmacies; public health entities, including those that compile, model, analyze and communicate public health information; pharmaceutical, pharmacy, medical device and equipment, and biotechnology companies (including operations, research and development, manufacture, and supply chain); organizations collecting blood, platelets, plasma, and other necessary materials; licensed medical cannabis dispensaries and licensed cannabis cultivation centers; reproductive health care providers; eye care centers, including those that sell glasses and contact lenses; home healthcare services providers; mental health and substance use providers; other healthcare facilities and suppliers and providers of any related and/or ancillary healthcare services; and entities that transport and dispose of medical materials and remains.

Specifically included in Healthcare and Public Health Operations are manufacturers, technicians, logistics, and warehouse operators and distributors of medical equipment, personal protective equipment (PPE), medical gases, pharmaceuticals, blood and blood products, vaccines, testing materials, laboratory supplies, cleaning, sanitizing, disinfecting or sterilization supplies, and tissue and paper towel products.

Healthcare and Public Health Operations also includes veterinary care and all healthcare services provided to animals.

Healthcare and Public Health Operations shall be construed broadly to avoid any impacts to the delivery of healthcare, broadly defined. Healthcare and Public Health Operations does not include fitness and exercise gyms, spas, salons, barber shops, tattoo parlors, and similar facilities.

8. **Human Services Operations.** For purposes of this Executive Order, individuals may leave their residence to work for or obtain services at any Human Services Operations, including any provider funded by the Illinois Department of Human Services, Illinois Department of Children and Family Services, or Medicaid that is providing services to the public and including state-operated, institutional, or community-based settings providing human services to the public.

Human Services Operations includes, but is not limited to: long-term care facilities; all entities licensed pursuant to the Child Care Act, 225 ILCS (Illinois Compiled Statutes) 10, except for day care centers, day care homes, group day care homes, and day care centers licensed as specified in Section 12(s) of this Executive Order; residential settings and shelters for adults, seniors, children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness;

transitional facilities; home-based settings to provide services to individuals with physical, intellectual, and/or developmental disabilities, seniors, adults, and children; field offices that provide and help to determine eligibility for basic needs including food, cash assistance, medical coverage, child care, vocational services, rehabilitation services; developmental centers; adoption agencies; businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged individuals, individuals with physical, intellectual, and/or developmental disabilities, or otherwise needy individuals.

Human Services Operations shall be construed broadly to avoid any impacts to the delivery of human services, broadly defined.

9. **Essential Infrastructure.** For purposes of this Executive Order, individuals may leave their residence to provide any services or perform any work necessary to offer, provision, operate, maintain and repair Essential Infrastructure.

Essential Infrastructure includes, but is not limited to: food production, distribution, and sale; construction (including, but not limited to, construction required in response to this public health emergency, hospital construction, construction of long-term care facilities, public works construction, and housing construction); building management and maintenance; airport operations; operation and maintenance of utilities, including water, sewer, and gas; electrical (including power generation, distribution, and production of raw materials); distribution centers; oil and biofuel refining; roads, highways, railroads, and public transportation; ports; cybersecurity operations; flood control; solid waste and recycling collection and removal; and internet, video, and telecommunications systems (including the provision of essential global, national, and local infrastructure for computing services, business infrastructure, communications, and web-based services).

Essential Infrastructure shall be construed broadly to avoid any impacts to essential infrastructure, broadly defined.

10. **Essential Governmental Functions.** For purposes of this Executive Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, law enforcement and corrections personnel, hazardous materials responders, child protection and child welfare personnel, housing and shelter personnel, military, and other governmental employees working for or to support Essential Businesses and Operations are categorically exempt from this Executive Order.

Essential Government Functions means all services provided by the State or any municipal, township, county, subdivision or agency of government and needed to ensure the continuing operation of the government agencies or to provide for or support the health, safety and welfare of the public, and including contractors performing Essential Government Functions. Each government body shall determine its Essential Governmental Functions and identify employees and/or contractors necessary to the performance of those functions.

This Executive Order does not apply to the United States government. Nothing in this Executive Order shall prohibit any individual from performing or accessing Essential Governmental Functions.

11. **Businesses covered by this Executive Order.** For the purposes of this Executive Order, covered businesses include any for-profit, non-profit, or educational entities, regardless of the nature of the service, the function it performs, or its corporate or entity structure.

12. **Essential Businesses and Operations.** For the purposes of this Executive Order, Essential Businesses and Operations means Healthcare and Public Health Operations, Human Services Operations, Essential Governmental Functions, and Essential Infrastructure, and the following:

   a. Stores that sell groceries and medicine. Grocery stores, pharmacies, certified farmers' markets, farm and produce stands, supermarkets, convenience stores, and other establishments engaged in the retail sale of groceries, canned food, dry goods, frozen foods, fresh fruits and vegetables, pet supplies, fresh meats, fish, and poultry, alcoholic and non-alcoholic beverages, and any other household consumer products (such as cleaning and personal care products). This includes stores

that sell groceries, medicine, including medication not requiring a medical prescription, and also that sell other non-grocery products, and products necessary to maintaining the safety, sanitation, and essential operation of residences and Essential Businesses and Operations;

b. Food, beverage, and cannabis production and agriculture. Food and beverage manufacturing, production, processing, and cultivation, including farming, livestock, fishing, baking, and other production agriculture, including cultivation, marketing, production, and distribution of animals and goods for consumption; licensed medical and adult use cannabis dispensaries and licensed cannabis cultivation centers; and businesses that provide food, shelter, and other necessities of life for animals, including animal shelters, rescues, shelters, kennels, and adoption facilities;

c. Organizations that provide charitable and social services. Businesses and religious and secular nonprofit organizations, including food banks, when providing food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities;

d. Media. Newspapers, television, radio, and other media services;

e. Gas stations and businesses needed for transportation. Gas stations and auto-supply, auto-repair, and related facilities and bicycle shops and related facilities;

f. Financial institutions. Banks, currency exchanges, consumer lenders, including but not limited, to payday lenders, pawnbrokers, consumer installment lenders and sales finance lenders, credit unions, appraisers, title companies, financial markets, trading and futures exchanges, affiliates of financial institutions, entities that issue bonds, related financial institutions, and institutions selling financial products;

g. Hardware and supply stores. Hardware stores and businesses that sell electrical, plumbing, and heating material;

h. Critical trades. Building and Construction Tradesmen and Tradeswomen, and other trades including but not limited to plumbers, electricians, exterminators, cleaning and janitorial staff for commercial and governmental properties, security staff, operating engineers, HVAC, painting, moving and relocation services, and other service providers who provide services that are necessary to maintaining the safety, sanitation, and essential operation of residences, Essential Activities, and Essential Businesses and Operations;

i. Mail, post, shipping, logistics, delivery, and pick-up services. Post offices and other businesses that provide shipping and delivery services, and businesses that ship or deliver groceries, food, alcoholic and non-alcoholic beverages, goods or services to end users or through commercial channels;

j. Educational institutions. Educational institutions—including public and private pre-K-12 schools, colleges, and universities—for purposes of facilitating distance learning, performing critical research, or performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible. This Executive Order is consistent with and does not amend or supersede Executive Order 2020-05 (COVID-19 (Coronavirus Disease 2019) Executive Order No. 3) or Executive Order 2020-06 (COVID-19 (Coronavirus Disease 2019) Executive Order No. 4) except that affected schools are ordered closed through April 7, 2020;

k. Laundry services. Laundromats, dry cleaners, industrial laundry services, and laundry service providers;

l. Restaurants for consumption off-premises. Restaurants and other facilities that prepare and serve food, but only for consumption off-premises, through such means as in-house delivery, third-party delivery, drive-through, curbside pick-up, and carry-out. Schools and other entities that typically provide food services to students or members of the public may continue to do so under this Executive Order on the condition that the food is provided to students or members of the public on a pick-up and takeaway basis only. Schools and other entities that provide food services under this

exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site due to the virus's propensity to physically impact surfaces and personal property. This Executive Order is consistent with and does not amend or supersede Section 1 of Executive Order 2020-07 (COVID-19 (Coronavirus Disease 2019) Executive Order No. 5) except that Section 1 is ordered to be extended through April 7, 2020;

m. Supplies to work from home. Businesses that sell, manufacture, or supply products needed for people to work from home;

n. Supplies for Essential Businesses and Operations. Businesses that sell, manufacture, or supply other Essential Businesses and Operations with the support or materials necessary to operate, including computers, audio and video electronics, household appliances; IT and telecommunication equipment; hardware, paint, flat glass; electrical, plumbing and heating material; sanitary equipment; personal hygiene products; food, food additives, ingredients and components; medical and orthopedic equipment; optics and photography equipment; diagnostics, food and beverages, chemicals, soaps and detergent; and firearm and ammunition suppliers and retailers for purposes of safety and security;

o. Transportation. Airlines, taxis, transportation network providers (such as Uber and Lyft), vehicle rental services, paratransit, and other private, public, and commercial transportation and logistics providers necessary for Essential Activities and other purposes expressly authorized in this Executive Order;

p. Home-based care and services. Home-based care for adults, seniors, children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness, including caregivers such as nannies who may travel to the child's home to provide care, and other in-home services including meal delivery;

q. Residential facilities and shelters. Residential facilities and shelters for adults, seniors, children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness;

r. Professional services. Professional services, such as legal services, accounting services, insurance services, real estate services (including appraisal and title services);

s. Day care centers for employees exempted by this Executive Order. Day care centers granted an emergency license pursuant to Title 89, Section 407.400 of the Illinois Administrative Code, governing Emergency Day Care Programs for children of employees exempted by this Executive Order to work as permitted. The licensing requirements for day care homes pursuant to Section 4 of the Child Care Act, 225 ILCS (Illinois Compiled Statutes) 10/4, are hereby suspended for family homes that receive up to 6 children for the duration of the Gubernatorial Disaster Proclamation.

t. Manufacture, distribution, and supply chain for critical products and industries. Manufacturing companies, distributors, and supply chain companies producing and supplying essential products and services in and for industries such as pharmaceutical, technology, biotechnology, healthcare, chemicals and sanitization, waste pickup and disposal, agriculture, food and beverage, transportation, energy, steel and steel products, petroleum and fuel, mining, construction, national defense, communications, as well as products used by other Essential Businesses and Operations.

u. Critical labor union functions. Labor Union essential activities including the administration of health and welfare funds and personnel checking on the well-being and safety of members providing services in Essential Businesses and Operations – provided that these checks should be done by telephone or remotely where possible.

v. Hotels and motels. Hotels and motels, to the extent used for lodging and delivery or carry-out food services.

w. Funeral services. Funeral, mortuary, cremation, burial, cemetery, and related services.

13. **Minimum Basic Operations.** For the purposes of this Executive Order, Minimum Basic Operations include the following, provided that employees comply with Social Distancing Requirements, to the extent possible, while carrying out such operations:

    a. The minimum necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, or for related functions.

    b. The minimum necessary activities to facilitate employees of the business being able to continue to work remotely from their residences.

14. **Essential Travel.** For the purposes of this Executive Order, Essential Travel includes travel for any of the following purposes. Individuals engaged in any Essential Travel must comply with all Social Distancing Requirements as defined in this Section.

    a. Any travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses and Operations, or Minimum Basic Operations.

    b. Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons.

    c. Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

    d. Travel to return to a place of residence from outside the jurisdiction.

    e. Travel required by law enforcement or court order, including to transport children pursuant to a custody agreement.

    f. Travel required for non-residents to return to their place of residence outside the State. Individuals are strongly encouraged to verify that their transportation out of the State remains available and functional prior to commencing such travel.

15. **Social Distancing Requirements.** For purposes of this Executive Order, Social Distancing Requirements includes maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

    a. Required measures. Essential Businesses and Operations and businesses engaged in Minimum Basic Operations must take proactive measures to ensure compliance with Social Distancing Requirements, including where possible:

        i. Designate six-foot distances. Designating with signage, tape, or by other means six-foot spacing for employees and customers in line to maintain appropriate distance;

        ii. Hand sanitizer and sanitizing products. Having hand sanitizer and sanitizing products readily available for employees and customers;

        iii. Separate operating hours for vulnerable populations. Implementing separate operating hours for elderly and vulnerable customers; and

        iv. Online and remote access. Posting online whether a facility is open and how best to reach the facility and continue services by phone or remotely.

16. **Intent of this Executive Order.** The intent of this Executive Order is to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 (Coronavirus Disease 2019) to the greatest extent possible. When people need to leave their places of residence, whether to perform Essential Activities, or to otherwise facilitate authorized activities necessary for continuity of social and commercial life, they should at all times and as much as reasonably possible comply with Social Distancing Requirements. All provisions of this Executive Order should be interpreted to effectuate this intent.

17. **Enforcement.** This Executive Order may be enforced by State and local law enforcement pursuant to, inter alia, Section 7, Section 18, and Section 19 of the Illinois Emergency Management Agency Act, 20 ILCS (Illinois Compiled Statutes) 3305.

18. **No limitation on authority.** Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing the State or any county, or local government body from ordering (1) any quarantine or isolation that may require an individual to remain inside a particular residential property or medical facility for a limited period of time, including the duration of this public health emergency, or (2) any closer of a specific location for a limited period of time, including the duration of this public health emergency. Nothing in this Executive Order shall, in any way, alter or modify any existing legal authority allowing a county or local government body to enact provisions that are stricter than those in this Executive Order.

## Section 2. Order ceasing evictions.

Pursuant to the Illinois Emergency Management Agency Act, 20 ILCS (Illinois Compiled Statutes) 3305/7(2), (8), and (10), all state, county, and local law enforcement officers in the State of Illinois are instructed to cease enforcement of orders of eviction for residential premises for the duration of the Gubernatorial Disaster Proclamation. No provision contained in this Executive Order shall be construed as relieving any individual of the obligation to pay rent, to make mortgage payments, or to comply with any other obligation that an individual may have under tenancy or mortgage.

## Section 3. Savings clause.

If any provision of this Executive Order or its application to any person or circumstance is held invalid by any court of competent jurisdiction, this invalidity does not affect any other provision or application of this Executive Order, which can be given effect without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are declared to be severable.

Issued by the Governor March 20, 2020
Filed by the Secretary of State March 20, 2020


GOVERNMENT (/GOVERNMENT)

Executive Branch (/government/executive-branch)

Executive Orders (/government/executive-orders)

Judicial Branch (/government/judicial-branch)

Legislative Branch (/government/legislative-branch)

Resources & Records (/government/resources-records)

Transparency & Accountability (/government/transparency-accountability)

BUSINESS (/BUSINESS)

Consumers (/business/consumers)

Manage your Business (/business/manage-your-business)

Manage your Employees (/business/manage-your-employees)

Registration, Licenses, & Permits (/business/registration-licenses-permits)

➕ View up to date information on how Illinois is handling the Coronavirus Disease 2019 (COVID-19) from the State of Illinois Coronavirus Response Site (https://coronavirus.illinois.gov/)

Illinois.gov (/)

# Executive Order 2020-30

**April 23, 2020**

**EXECUTIVE ORDER 2020-30**

## EXECUTIVE ORDER IN RESPONSE TO COVID-19 (Coronavirus Disease 2019) (COVID-19 (Coronavirus Disease 2019) EXECUTIVE ORDER NO. 28)

**WHEREAS**, Coronavirus Disease 2019 (COVID-19) is a novel severe acute respiratory illness that can spread among people through respiratory transmissions and present with symptoms similar to those of influenza; and,

**WHEREAS**, I, JB Pritzker, Governor of Illinois, declared all counties in the State of Illinois as a disaster area on March 9, 2020 (First Gubernatorial Disaster Proclamation) in response to the outbreak of COVID-19; and,

**WHEREAS**, I again declared all counties in the State of Illinois as a disaster area on April 1, 2020 (the Second Gubernatorial Disaster Proclamation, and, together with the First Gubernatorial Disaster Proclamation, the Gubernatorial Disaster Proclamations) in response to the exponential spread of COVID-19; and,

**WHEREAS**, in a short period of time, COVID-19 has rapidly spread throughout Illinois, necessitating updated and more stringent guidance from federal, state, and local public health officials; and,

**WHEREAS**, the number of COVID-19 cases in Illinois has increased exponentially and across more locations in Illinois and is resulting in an increasing number of deaths; and,

**WHEREAS**, on March 20, 2020, I issued Executive Order 2020-10, in which I ordered all individuals currently living within the State of Illinois to stay at home or at their place of residence except as allowed in the Executive Order; and,

**WHEREAS**, in Executive Order 2020-10, I ordered all businesses and operations in the State, except Essential Businesses and Operations as defined in the Executive Order, to cease all activities within the State except Minimum Basic Operations, as defined in the Executive Order; and,

**WHEREAS**, Executive Order 2020-18 extended Executive Order 2020-10 in its entirety for the duration of the Gubernatorial Disaster Proclamations, which currently extends through April 30, 2020; and,

**WHEREAS**, COVID-19 has resulted in significant economic impact, including loss of income and wages, that threatens to undermine the financial security of many Illinoisans; and,

**WHEREAS**, while Executive Order 2020-10 prohibits law enforcement from enforcing eviction orders for residential properties, the ongoing public health emergency requires further action to prevent the initiation of residential eviction proceedings; and,

**WHEREAS**, residential evictions are contrary to the interest of preserving public health by ensuring that individuals remain in their homes during this public health emergency; and,

**WHEREAS**, protections for tenants of non-residential properties are necessary to ensure that Essential Businesses and Operations, as defined in Executive Order 2020-10, are able to continue providing necessary goods and services, and other businesses are able to comply with the previously mandated closures and restrictions; and,

**WHEREAS**, residential and non-residential eviction actions are governed by Article IX of the Illinois Code of Civil Procedure, 735 ILCS 5/9-101 et seq.; and,

**WHEREAS**, the Consular Identification Document Act, 5 ILCS 230/1 et seq., provides that each State agency and officer and unit of local government that requires members of the public to provide identification shall accept a consular identification document as valid identification of a person; and,

**WHEREAS**, consular identification documents are official identification cards issued by a foreign government through its consular offices for the purpose of identifying a foreign national who is living outside of that nation; and,

**WHEREAS**, in an effort to reduce the spread of COVID-19, many consular offices in the State of Illinois have suspended or reduced certain services, including the issuance and renewals of consular identification documents;

**THEREFORE**, by the powers vested in me as the Governor of the State of Illinois, and pursuant to Sections 7(1), 7(2), 7(8), 7(10), and 7(12) of the Illinois Emergency Management Agency Act, 20 ILCS 3305, I hereby order the following, effective April 23, 2020 and for the remainder of the duration of the Gubernatorial Disaster Proclamations:

Section 1. Definitions. As used in this Executive Order, "State Agency" means any office, department, agency, board, commission or authority of the Executive Branch of the State of Illinois under the jurisdiction of the Governor.

Section 2. A person or entity may not commence a residential eviction action pursuant to or arising under 735 ILCS 5/9-101 et seq., unless a tenant poses a direct threat to the health and safety of other tenants, an immediate and severe risk to property, or a violation of any applicable building code, health ordinance, or similar regulation. Nothing in this Executive Order shall be construed as relieving any individual of the obligation to pay rent or comply with any other obligation that an individual may have pursuant to a lease or rental agreement. This Executive Order does not supersede any provision of any other prior Executive Order.

Section 3. All state, county, and local law enforcement officers in the State of Illinois are instructed to cease enforcement of orders of eviction for non-residential premises, unless the tenant has been found to pose a direct threat to the health and safety of other tenants, an immediate and severe risk to property, or a violation of any applicable building code, health ordinance, or similar regulation. Nothing in this Executive Order shall be construed as relieving any individual or entity of the obligation to pay rent or

comply with any other obligation that an individual or entity may have pursuant to a lease or rental agreement. The continued need for this directive shall be evaluated upon issuance of any new Gubernatorial Disaster Proclamation.

Section 4. Any State Agency that requires members of the public to provide identification pursuant to a statute, order, rule, or regulation shall accept a consular identification document issued pursuant to the Consular Identification Document Act, 5 ILCS 230/1 et seq., as valid identification of a person, including any consular identification document that expired on or after the date of the First Gubernatorial Disaster Proclamation.

Section 5. The provision of Title 56, Section 5300.30 of the Illinois Administrative Code, setting forth procedural rules for the Illinois Human Rights Commission and requiring motions, orders, notices, and other pleadings to be served either personally or by first-class mail, is suspended. Service of pleadings pursuant to Section 5300.30 shall be permitted personally, by first-class mail, or by electronic mail for the duration of the Gubernatorial Disaster Proclamations.

Section 6. If any provision of this Executive Order or its application to any person or circumstance is held invalid by any court of competent jurisdiction, this invalidity does not affect any other provision or application of this Executive Order, which can be given effect without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are declared to be severable.

Issued by the Governor April 23, 2020
Filed by the Secretary of State April 23, 2020


GOVERNMENT (/GOVERNMENT)

Executive Branch (/government/executive-branch)

Executive Orders (/government/executive-orders)

Judicial Branch (/government/judicial-branch)

Legislative Branch (/government/legislative-branch)

Resources & Records (/government/resources-records)

Transparency & Accountability (/government/transparency-accountability)

BUSINESS (/BUSINESS)

Consumers (/business/consumers)

Manage your Business (/business/manage-your-business)

Manage your Employees (/business/manage-your-employees)

Registration, Licenses, & Permits (/business/registration-licenses-permits)

EMPLOYMENT (/EMPLOYMENT)

Employee Rights (/employment/employee-rights)

Find Jobs (/employment/find-jobs)

Professional Licenses (/employment/professional-licenses)

View up to date information on Illinois' Covid-19 vaccine plan and vaccination eligibility from the State of Illinois Coronavirus Response Site (https://coronavirus.illinois.gov/s/vaccination-plan-overview)

Illinois.gov (/)

# Executive Order 2020-39

**May 29, 2020**

**EXECUTIVE ORDER 2020-39**

### EXECUTIVE ORDER IN RESPONSE TO COVID-19 (Coronavirus Disease 2019) (COVID-19 (Coronavirus Disease 2019) EXECUTIVE ORDER NO. 37)

**WHEREAS**, since early March 2020, Illinois has been faced with a disaster caused by a pandemic that has taken the lives of more than 5,180 residents and infected over 100,000, resulting in extraordinary sickness and loss of life, and continues to spread; and,

**WHEREAS**, at all times but especially during a public health crisis, protecting the health and safety of Illinoisans is among the most important functions of State government; and,

**WHEREAS**, as Illinois enters the fourth month of responding to the public health disaster caused by Coronavirus Disease 2019 (COVID-19), a novel severe acute respiratory illness that has spread and continues to spread rapidly among people through respiratory transmissions and is without an effective treatment or vaccine, the burden on residents, healthcare providers, first responders and governments throughout the State is unprecedented; and,

**WHEREAS**, the World Health Organization declared COVID-19 a Public Health Emergency of International Concern on January 30, 2020, and the United States Secretary of Health and Human Services declared that COVID-19 presents a public health emergency on January 27, 2020; and,

**WHEREAS**, on March 9, 2020, I, JB Pritzker, Governor of Illinois, declared all counties in the State of Illinois as a disaster area in response to the outbreak of COVID-19; and,

**WHEREAS**, on April 1, 2020, due to the exponential spread of COVID-19 in Illinois, I again declared all counties in the State of Illinois as a disaster area; and,

**WHEREAS**, on April 30, 2020, due to the continued spread of COVID-19 in Illinois, the threatened shortages of hospital beds, ER beds, and ventilators, and the inadequate testing capacity, I again declared all counties in the State of Illinois as a disaster area; and,

**WHEREAS**, in addition to causing the tragic loss of 5,186 Illinoisans and wreaking havoc on the physical health of tens of thousands more, COVID-19 has caused extensive economic loss and continues to threaten the financial welfare of a significant number of individuals and businesses across the nation and the State; and,

**WHEREAS**, on May 29, 2020, due to the thousands of lives lost to COVID-19 in Illinois, the continued increase of cases, the continued threat of shortages of hospital beds, ER beds, and ventilators, the improved but still insufficient testing capacity, and the financial destruction caused by the virus, I again declared all counties in the State of Illinois as a disaster area; and,

**WHEREAS**, the 101st General Assembly convened for a Special Session beginning on May 20, 2020 and passed a number of bills, some of which address provisions of prior Executive Orders; and,

**WHEREAS**, in response to the epidemic emergency and public health emergency described above, I find it necessary to re-issue Executive Orders 2020-03, 2020-04, 2020-05, 2020-06, 2020-07, 2020-08, 2020-09, 2020-11, 2020-12, 2020-13, 2020-14, 2020-15, 2020-16, 2020-17, 2020-20, 2020-21, 2020-22, 2020-23, 2020-24, 2020-25, 2020-26, 2020-27, 2020-28, 2020-29, 2020-30, 2020-31, 2020-34, 2020-35, 2020-36, and 2020-37 and hereby incorporate the WHEREAS clauses of those Executive Orders;

**THEREFORE**, by the powers vested in me as the Governor of the State of Illinois, pursuant to the Illinois Constitution and Sections 7(1), 7(2), 7(3), 7(8), 7(9), and 7(12) of the Illinois Emergency Management Agency Act, 20 ILCS 3305, and consistent with the powers in public health laws, I hereby order the following, effective May 29, 2020:

**Part 1: Re-Issue of Executive Orders.**

Executive Orders 2020-03, 2020-04, 2020-05, 2020-06, 2020-07, 2020-08, 2020-09, 2020-11, 2020-12, 2020-13, 2020-14, 2020-15, 2020-16, 2020-17, 2020-20, 2020-21, 2020-22, 2020-23, 2020-24, 2020-25, 2020-26, 2020-27, 2020-28, 2020-29, 2020-30, 2020-31, 2020-34, 2020-35, 2020-36, and 2020-37 hereby are re-issued by this Executive Order 2020-39 as follows:

**Executive Order 2020-04 (Closure of James R. Thompson Center; waiver of sick leave requirement for State employees):**

Sections 2 and 3 of Executive Order 2020-04 are re-issued and extended through **June 27, 2020**.

**Executive Orders 2020-05 and 2020-06 (School closures):**

Section 1 of Executive Order 2020-05 and Sections 1 and 2 of Executive Order 2020-06 are re-issued and extended through **June 27, 2020**.

Sections 2 and 3 of Executive Order 2020-05 are re-issued and extended through **June 27, 2020** or until corresponding legislation (SB 1569) is enacted and takes effect, whichever occurs first.

**Executive Order 2020-07 (Suspension of on-premises consumption at restaurants and bars; unemployment insurance; Open Meetings Act):**

Sections 3 and 4 of Executive Order 2020-07 are re-issued and extended through **June 27, 2020**.

Section 5 of Executive Order 2020-07 is re-issued and extended through **June 27, 2020** or until corresponding legislation (HB 2455) is enacted and takes effect, whichever occurs first.

Section 6 of Executive Order 2020-07, as amended by Executive Order 2020-33, is re-issued and extended through **June 27, 2020** or until corresponding legislation (SB 2135) is enacted and takes effect, whichever occurs first.

**Executive Order 2020-08 (Secretary of State operations):**

Executive Order 2020-08, as amended below, is re-issued in its entirety and extended through **June 27, 2020**.

Section 3. During the duration of and for no more than thirty days following the termination of the Gubernatorial Disaster Proclamations, the requirements in the Limited Liability Company Act, 805 ILCS 180/55-5; Uniform Limited Partnership Act (2001), 805 ILCS 215/1309; General Not For Profit Corporation Act of 1986, 805 ILCS 105/101.45; and Business Corporation Act of 1983, 805 ILCS 5/1.45, that the Secretary shall, within 10 days after delivery of any document required by those Acts to be filed with the Secretary of State, notify the filer if the Secretary disapproves of the document, are suspended. During this time the Secretary shall process these documents as expeditiously as possible.

Section 4. During the duration of and for no more than thirty days following the termination of the Gubernatorial Disaster Proclamations, the Secretary's obligations to provide expedited services as set forth in the Limited Liability Company Act, 805 ILCS 180/50-50; Uniform Limited Partnership Act (2001), 805 ILCS 215/1308; Uniform Partnership Act (1997), 805 ILCS 206/1209; General Not For Profit Corporation Act of 1986, 805 ILCS 105/115.20; and Business Corporation Act of 1983, 805 ILCS 5/15.95, are suspended.

**Executive Order 2020-09 (Telehealth):**

Executive Order 2020-09 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-11 (Revisions to prior Executive Orders; Department of Corrections notification period):**

Section 3 of Executive Order 2020-11 is re-issued and extended through **June 27, 2020** or until corresponding legislation (SB 1569) is enacted and takes effect, whichever occurs first.

Section 4 of Executive Order 2020-11 is re-issued and extended through **June 27, 2020**.

**Executive Order 2020-12 (Health care worker background checks; Department of Juvenile Justice notification period; Coal Mining Act):**

Executive Order 2020-12 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-13 (Suspending Illinois Department of Corrections admissions from county jails):**

Executive Order 2020-13 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-14 (Notary and witness guidelines):**

Executive Order 2020-14, as amended by Executive Order 2020-33, is re-issued in its entirety and extended through **June 27, 2020** or until corresponding legislation (SB 2135) is enacted and takes effect, whichever occurs first.

**Executive Order 2020-15 (Suspending provisions of the Illinois School Code):**

Sections 1, 2, 3, and 4 of Executive Order 2020-15 are re-issued and extended through **June 27, 2020** or until corresponding legislation (SB 1569) is enacted and takes effect, whichever occurs first.

Sections 5, 6, 7, 8, and 9 of Executive Order 2020-15 are re-issued and extended through **June 27, 2020**.

**Executive Order 2020-16 (Repossession of vehicles; suspension of classroom training requirement for security services):**

Executive Order 2020-16 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Orders 2020-03 and 2020-17 (Cannabis deadlines and applications):**

Executive Orders 2020-03 and 2020-17, as modified by Executive Order 2020-18, are re-issued and shall remain in effect as specified by Executive Order 2020-18.

**Executive Order 2020-20 (Public assistance requirements):**

Executive Order 2020-20 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-21 (Furlough of Illinois Department of Corrections inmates):**

Executive Order 2020-21 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-22 (Township meetings; Funeral Directors and Embalmers Licensing Code; placements under the Child Care Act of 1969; fingerprint submissions under Health Care Worker Background Check Act):**

Section 1 of Executive Order 2020-22 is re-issued and extended through **June 27, 2020** or until corresponding legislation (HB 2096) is enacted and takes effect, whichever occurs first.

Sections 2, 3, 4, 5 and the Savings Clause of Executive Order 2020-22 are re-issued and extended through **June 27, 2020**.

**Executive Order 2020-23 (Actions by the Illinois Department of Financial and Professional Regulation for licensed professionals engaged in disaster response):**

Executive Order 2020-23 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-24 (Illinois Department of Human Services Forensic Treatment Program; investigations of Illinois Department of Human Services employees):**

Executive Order 2020-24 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-25 (Garnishment and wage deductions):**

Executive Order 2020-25 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-26 (Hospital capacity):**

Executive Order 2020-26 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-27 (Cadavers testing positive for COVID-19):**

Executive Order 2020-27 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-28 (Industrial radiography certifications):**

Executive Order 2020-28 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-29 (In-person education or exams for professional insurance licenses):**

Executive Order 2020-29 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-30 (Filing of residential eviction actions; enforcement of non-residential eviction orders; expired consular identification documents; electronic filings for the Illinois Human Rights Commission):**

Executive Order 2020-30, as amended by Executive Order 2020-33, is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-31 (Educator licensure and student graduation requirements):**

Executive Order 2020-31 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-34 (Cannabis requirements):**

Executive Order 2020-34 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-35 (IDPH regulatory activities):**

Executive Order 2020-35 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-36 (Marriage licenses):**

Executive Order 2020-36 is re-issued in its entirety and extended through **June 27, 2020**.

**Executive Order 2020-37 (Immunity from civil liability for health care facilities, professionals, and volunteers):**

Executive Order 2020-37, which superseded Executive Order 2020-19 as of its effective date May 13, 2020, is re-issued in its entirety and extended through **June 27, 2020**.

**Part 2: Savings Clause.** If any provision of this Executive Order or its application to any person or circumstance is held invalid by any court of competent jurisdiction, this invalidity does not affect any other provision or application of this Executive Order, which can be given effect without the invalid provision or application. To achieve this purpose, the provisions of this Executive Order are declared to be severable.

Issued by the Governor May 29, 2020

Filed by the Secretary of State May 29, 2020


GOVERNMENT

Executive Branch

Executive Orders (/government/executive-orders)

Judicial Branch

Legislative Branch

BUSINESS

EMPLOYMENT

EDUCATION

RESIDENTS

VISITING

ABOUT

EMAIL UPDATES (/PAGES/COMMUNICATIONSOPTIN.ASPX)

SEARCH

News

NEWS

Release (/news/release)


Stay Informed

Emergencies & Disasters (https://www.illinois.gov/ready)
Flag Honors (/Pages/News/flag-honors.aspx)
Road Conditions (http://www.gettingaroundillinois.com/)
Traveler Information (http://www.gettingaroundillinois.com/)
Get Email Updates (/sites/gov/pages/communicationsoptin.aspx)

Helpful Links

Illinois Privacy Info (/Pages/About/Privacy.aspx)
Kids Privacy (/Pages/About/Kids-Privacy.aspx)
Contact Us (/Pages/About/ContactUs.aspx)
FOIA Contacts (/Pages/FOIA-Contacts.aspx)
State Press Contacts (/cms/agency/media/relations/pages/mediacontacts.aspx)
Tech Ready Illinois (https://www.techreadyillinois.com/)

## Stay Connected

 (http://twitter.com/GovPritzker)     (https://www.facebook.com/GovPritzker)

(http://instagram.com/GovPritzker)

## Translate

Select Language

Powered by Google Translate (https://translate.google.com)

---

_(/)

- Web Accessibility (http://www.dhs.state.il.us/page.aspx?item=32765)
- Missing & Exploited Children (http://www.missingkids.com/)
- Amber Alerts (http://www.amberillinois.org/)
- Illinois Privacy Info (https://www.illinois.gov/about/privacy.html)

Governor JB Pritzker (/sites/gov)
© 2021 State of Illinois (https://www.illinois.gov/)