UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 4:20-cr-40026 |
| ANTHONY TONY GAY, ) | |
| ) | |
| Defendant. ) | |

### Third Emergency Motion for Release from Custody Pending Sentencing

Defendant, Anthony Gay, through his attorney, Jennifer Soble of the Illinois Prison Project, moves this Court on an emergency basis to order that the Defendant, Anthony Gay, be released as soon as possible from pre-trial detention until his sentencing hearing, or in the alternative, that he be transferred to a non-BOP hospital setting. Since Mr. Gay's incarceration began in April 2022, he has experienced severe panic attacks caused by being held in solitary confinement. BOP providers have demonstrated that they are not capable of appropriately managing his severe mental health condition, which has continued to deteriorate. His counsels are gravely concerned that he poses an imminent risk of death or serious bodily harm to himself if he remains incarcerated. In further support of this motion, Mr. Gay states the following:

### Procedural History

1. Mr. Gay was charged by indictment with one count of possession of a firearm by a felon and one count of possession of ammunition, both pursuant to 18 U.S.C. § 922. After arraignment, Mr. Gay was taken into the custody of the U.S. Marshal, and was held at the Rock Island County Jail. Over the course of just a few weeks, Mr. Gay dramatically psychologically decompensated and began self-harming.

2. On July 16, 2020, counsel for Mr. Gay filed a motion to reduce his bond based on his deteriorated mental state. This Court granted that motion, finding that there were release conditions that could guarantee Mr. Gay's return to court and the safety of the community, and also that continued detention posed a distinct risk of harm to Mr. Gay.

3. *See* Minute Entry, July 17, 2020; *see also* 18 U.S.C. § 3142(f)(1)(E) (allowing release on pretrial detention for a defendant charged with firearm offenses only after a finding that release conditions "will reasonably assure the appearance of such person as required and the safety of any other person and the community").

4. From August 2020 to May 2022, Mr. Gay remained in the community. During that time, he was in compliance with the conditions of his release. Over this 23-month period, he sought permission to visit his mother in a nursing home, testify before the Illinois State Legislature, and meet with advocates in Chicago, including Bobby Rush's Rainbow PUSH Coalition. Although not every motion was granted, Mr. Gay remained in compliance with this Court's orders, scrupulously sought permission to modify bond conditions where appropriate, and accepted unfavorable rulings.

5. Between August 2020 and April 2022, Mr. Gay terminated his relationship with several court-appointed attorneys, opting to represent himself at trial. On September 20, 2021, this Court found that Mr. Gay was competent to represent himself at trial.

6. On April 18, 2022, Mr. Gay represented himself at a jury trial before this Court that lasted five days. The jury was not able to reach a unanimous verdict on either count, and this Court declared a mistrial.

7. On May 16, 2022, this Court presided over a retrial. This retrial resulted in a guilty verdict.

8. After the guilty verdict, this Court granted the government's request that Mr. Gay be taken into custody. Mr. Gay was taken into custody by the U.S. Marshals and sent to the Peoria County Jail, where he immediately requested a mental health consultation.

9. Over the course of the first week in custody, Mr. Gay experienced mental health crisis, panic attacks, and at least two severe episodes of self-harm (details below) while being held in Peoria County Jail.

9. Through counsel, Mr. Gay filed a motion to reduce his detention. On June 17, 2022, this Court heard testimony from Marjorie Moss, a social worker who has worked with Mr. Gay since at least 2017. Ms. Moss described Mr. Gay's unbearable experience of prolonged solitary confinement, his long history of post-traumatic stress disorder, and his history of self-harm while in solitary confinement. Ms. Moss also described the support Mr. Gay has in the community and the additional support she will help him obtain if released.

10. On June 21, 2022, this Court entered an order denying Mr. Gay's motion to reduce detention, noting that, although it was clear that the Peoria County Jail cannot adequately care for or treat Mr. Gay, he will be held and treated in the Bureau of Prisons during his court-ordered evaluation.

11. Between June 21 and June 30, 2022, Mr. Gay continued to repeatedly experience mental health crisis, panic attacks, and episodes of self-harm (details below) while being still held in Peoria County Jail.

12. On June 30, Mr. Gay through counsel filed an Emergency Motion for Hospitalization Pending Transfer to the Bureau of Prisons, detailing the ongoing self-harm episodes that

Mr. Gay was experiencing and the inability of Peoria County Jail to ensure his safety. On June 30, 2022, that motion was denied.

13. On or about July 5, 2022, Mr. Gay was transferred to FCI Butner.

### Mr. Gay's Self-Harm Since DATE

14. Since early July, 2022, Mr. Gay has been held in the custody of the Bureau of Prisons, including at FC1 1, FCI Butner, and FCI Butner's Federal Medical Center (FMC). He has been held in solitary confinement for the majority of his time in custody. Throughout this time, he has continued to suffer from severe emotional distress, panic attacks, and episodes of self-harm. Having previously been held in solitary confinement more than two decades, Mr. Gay's episodes of self-harm often take place in the midst of panic attacks triggered by his being held in isolation for an apparently indeterminate period of time.

15. On Monday August 1, 2022, while being held at FCI 1 and in a state of severe emotional distress, Mr. Gay self-harmed by inserting a piece of plastic in his left eye. He was briefly seen by the facility's medical doctor but returned to his cell without medical intervention; the plastic remained embedded in his eyeball.

16. Sometime later that day after being returned to his cell with mental health or medical intervention, Mr. Gay made a new incision in his scrotum and inserted approximately 5 to 6 pieces of plastic into his scrotm. Correctional Officer. Katnick (phonetic) observed him self-harming and alerted a nurse. Mr. Gay was then transported to Duke Regional Hospital and transported to Duke University, where he underwent surgery on his left eye, during which the plastic was removed. Mr. Gay was not treated for the injury to his

scrotum at this time. He remained in the hospital overnight and returned to FCI 1on Tuesday, August 2nd, with shards of plastic still embedded in his scrotum.

17. On Sunday, August 7th, Mr. Gay, while still being held in solitary confinement, was experiencing severe mental health crisis and was afraid that he was a danger to himself. At 11:00am, he informed Correctional Officer Jay (phonetic) of his distress and asked to be seen by mental health staff immediately. By 2:00pm, no mental health staff had arrived. Mr. Gay again asked correctional staff if he could be seen by mental health staff immediately. At 2:30pm, Mr. Gay was cuffed and removed from his cell and taken to an office, where Dr. Ross was telephonically present via speaker phone. Lieutenant Quinn remained present in the room with Mr. Gay, who was in cuffs and other officers were within easy earshot of Dr. Ross and Mr. Gay's conversation. Mr. Gay was unable to speak with Dr. Ross privately and thus unable to address his crisis. No confidential environment was provided and Mr. Gay was returned to his cell.

18. In the evening hours of that same day, Mr. Gay embedded 3 to 4 pieces of plastic into the skin of his arm. He also made a new incision in his scrotum and inserted 6 more pieces of plastic into the incision site. The injuries were so severe that Mr. Gay bled all over the floor of his cell. Mr. Gay also felt lightheaded and dizzy after losing blood from these injuries. Mr. Gay was taken to Duke Regional, where he was sedated and the plastic was removed from his arm.

19. The next day, Monday August 8th, while still at Duke Regional, Mr. Gay underwent surgery on his scrotum. Prior to being anesthetized for the surgery, medical staff informed him that they may have to remove his testical because of the severity of the injuries to his scrotum. Mr. Gay signed a form consenting to the removal of his testical if deemed

medical necessary. Surgeons removed approximately 12 shards of plastic from Mr. Gay's scrotum; amputation of his testical was successfully avoided. Mr. Gay remained in the hospital for three days. During this time, one of his treating doctors refused to discharge Mr. Gay to FCI 1 because of the risks of self-harm presented by solitary confinement. He was later discharged by another doctor on or about Thursday, August 11th.

20. On Wednesday, August 17th, Mr. Gay reported to staff that he was in emotional distress. At that time, Dr. Ross presented to him a treatment plan that she indicated he needed to agree to in order to be allowed to return to FCI Butner. Mr. Gay reviewed the treatment which provided, *inter alia*, that correctional staff were to **deny** Mr. Gay social contact in the event he self-harmed. Mr. Gay refused to sign the plan, which uses social isolation as a punishment for his mental health symptoms, despite the fact that Mr. Gay's self-harming behavior is a symptom of his PTSD from surviving decades of isolation. Mr. Gay was distraught and was put on suicide watch, which includes being held in isolation. He was on suicide watch until the following day.

21. On Friday, August 19th at approximately 2:00am, Mr. Gay sliced open his arm and inserted a screw. He then inserted plastic into his left eye, the same eye that he had surgery on just 18 days earlier. At the same time, Lieutenant Ruffin (phonetic) observed Mr. Gay's injuries but did not intervene and, on information and belief, did not call for assistance. Approximately 15-20 minutes after Lieutenant Ruffin observed Mr. Gay's injuries from self-harm and took no observable action, Mr. Gay further exacerbated the injury to his scrotum.

22. At approximately 4:00am, Lieutenant Ruffin told Mr. Gay to put cufs on and Lieutenant Ruffin removed him from the cell and told him, "I should slap you," for engaging in

self-harm. Two other officers, including Officer Ford and an Office B— were present for this threat. Lieutenant Ruffin then put Mr. Gay in a holding cell, where he stayed until 7:00am. At approximately 7:00am, Mr. Gay was returned to his cell. Sometime after 8:00, he was seen by mental health and medical staff at the facility.

23. At 12:30pm, Mr. Gay was transported to an outside hospital, where he was sedated and underwent surgery; the screw was removed from his arm and the plastic pieces were removed from his eye. He remained in the hospital overnight.

24. On Saturday, August 20th, Mr. Gay returned to FCI 1. He was held on suicide watch for the during of the weekend.

25. On Thursday, August 24th, Mr. Gay was transferred to the Federal Medical Center (FMC) at Butner. Since arriving at the FMC, Mr. Gay has been held in isolation. He continues to struggle with managing his panic attacks and often fears that his symptoms of wanting to self-harm will again become overwhelming. He fears for his own safety and well-being due to the risk of harm he presents to himself.

### Mr. Gay's Previous Self-Harm

26. Mr. Gay has struggled with symptoms of self-harm triggered by being held in solitary confinement since he was first taken into custody post-trial on May 16, 2022. Mr. Gay was initially held at Peoria County Jail before being transferred to BOP custody. Over the course of the first week in custody, Mr. Gay self-harmed at least twice. In the first incident, he plunged a pencil into his arm, and then stuffed several plastic bags into the open wound. In the second incident, he cut his scrotum with a piece of eggshell. He was placed on 24-hour suicide watch, which went on for weeks.

27. On or about June 21, 2022, Mr. Gay cut his arm open with a spoon. He also placed a piece of plastic in his eye, causing excruciating pain. He was treated at Methodist Hospital, where he received stitches for his arm but did not remove the plastic from his eye. Only after counsel for Mr. Gay contacted the U.S. Marshals was Mr. Gay was returned to the hospital on or about June 23, 2022, where he was anesthetized and the plastic was removed from his eyeball.

28. On or about June 25, 2022, Mr. Gay again experienced an episode of self-harm during which he put a piece of plastic in his eye, and again needed medical treatment. Around that time frame, he also cut his scrotum with a piece of plastic.

29. On Tuesday, June 28, Correctional Officer Ryan Johnson pulled Mr. Gay's mattress out of his cell, leaving him on the floor. Mr. Gay took a piece of plastic and cut his scrotum so badly that his testicle was exposed. When CO Johnson was notified that Mr. Gay was cutting himself, CO Johnson stated that he didn't care. Fifteen minutes later, after Mr. Gay's cell was covered in blood, correctional officers entered the cell, cuffed him, and kicked him while he was on the floor. Mr. Gay was then placed in a restraint chair with his hands cuffed behind his back, a strap around his chest, and a spit hood on his head, where he was held for hours alone without respite, food, medical care, or communication. It was not until approximately three hours after he was initially cuffed that mental health staff responded to him. He was then transported to a local hospital, where he received stitches. During the nearly 6 hours (8am to 2pm) that Mr. Gay was held in a restraint chair, he was not provided with food or water or allowed to use the bathroom. He used the bathroom only when he arrived at the hospital and was removed from the restraint chair.

30. On June 30, 2022, at approximately 8:30am on June 30, 2022, Mr. Gay cut open his right forearm using a toenail. The gash in his arm was large enough that he could insert his finger into it without moving the flesh. At 10:00am on June 30, 2022, defense attorneys for Mr. Gay visited him in person at Peoria County Jail in advance of his meeting with the Presentencing Sentencing Investigation investigator. At that time, Mr. Gay was wheeled into the interview room while strapped into a restraint chair and in a suicide smock. He was naked except for the smock. Both hands and both feet were handcuffed to the chair, and an inverted-V-shaped strap held Mr. Gay's back tightly against the back of the chair. Defense attorneys immediately observed that Mr. Gay had a gash in his right forearm that had been covered with gauze and medical tape. It was apparent that blood had already soaked through the gauze and was only being contained by the medical tape that was keeping the gauze in place. Several of Mr. Gay's fingers were also covered in blood. Mr. Gay stated that he had been held in the restraint chair continuously since 8:30 this morning. At the time of the legal meeting, jail staff had refused to transport him to the hospital for medical treatment. They also refused to provide him with soap to wash the blood from his hands. Mr. Gay was at no time removed from his restraints during this meeting.

31. Despite having been held in the custody of the Bureau of Prisons since DATE, BOP staff have not demonstrated that they are equipped to appropriately or effectively manage Mr. Gay's severe mental health condition. His psychological state has, in fact, continued to deteriorate. He has had numerous episodes of severe self-harm during his time in federal custody, been hospitalized approximately six times, and had his mental health or medical needs dismissed by correctional officers on numerous occasions, leading to further

self-harm episodes and increasing medical risks. Counsel for Mr. Gay remains gravely and urgently concerned that Mr. Gay's self-harm episodes will become life-threatening.

WHEREFORE, for the reasons stated herein and any others that may be apparent to the Court, Mr. Gay requests that this Court order that Mr. Gay be released pending his sentencing hearing. Counsel requests a hearing on this motion.

/s/ Jennifer Soble
Jennifer Soble
*Attorney for Defendant Anthony Gay*
Illinois Prison Project
53 W. Jackson, Suite 452 Chicago, IL 60604
ph: (312) 324-4463 x701
fax: (773) 389-3344
jennifer@illinoisprisonproject.org

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to: AUSA John Mehochko.


/s/ Jennifer Soble
Jennifer Soble
*Attorney for Defendant*