## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cr-40026-JES |
| | ) | |
| ANTHONY TONY GAY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Anthony Tony Gay's Amended Motion for Compassionate Release, pursuant to § 18 U.S.C. 3582(c)(1)(A). Doc. 469 (the "Motion"). The Government moves to dismiss the Motion. Doc. 476. For the following reasons, Mr. Gay's Amended Motion for Compassionate Release (Doc. 469) is GRANTED.

## BACKGROUND

On June 21, 2024, Mr. Gay filed a *pro se* motion for compassionate release, arguing that the conditions of his confinement warranted release. Doc. 465. The Government moved to dismiss that motion, arguing that Mr. Gay failed to exhaust his administrative remedies. Doc. 466. On July 22, 2024, Attorney Michael T. Brody filed a status report with the Court indicating that he intended to file an amended motion for compassionate release on Mr. Gay's behalf. Doc. 467. And so, the Court dismissed Mr. Gay's initial motion (Doc. 465) without prejudice to refiling and denied the Government's motion to dismiss (Doc. 466) as moot. *See* Text Order Dated July 25, 2024.

Mr. Gay's Amended Motion (Doc. 469) followed, accompanied by a set of sealed exhibits including a memorandum of law (Doc. 471), Mr. Gay's medical records (Doc. 471-5), and the Declaration of Kathy Johnson Neely, M.D. (Doc. 471-1) who interprets the medical records. Counsel explains that Mr. Gay's health has declined rapidly since he filed his *pro se* motion, and

he moves for Mr. Gay's immediate release on that basis. Doc. 471 at 2. In particular, Dr. Neely attests that "Mr. Gay, a 50-year-old man, has widely metastatic cancer," apparently in his liver, duodenum, and lungs, that likely "is rapidly growing" and is resistant to treatment. Doc. 471-1 at 3. She also attests that Mr. Gay "suffers from pneumonia," and "that treatment may not be possible due to Mr. Gay's rapidly diminishing clinical status." *Id.* Dr. Neely notes that Mr. Gay "has had significant weight loss" and diminished "lung function." *Id.* The Government moves, once again, to dismiss the Motion for failure to exhaust. Doc. 476. Mr. Gay responded. Doc. 477.

## EXHAUSTION

To be sure, before filing a motion for compassionate release, a defendant first must request that the Bureau of Prisons ("BOP") file the motion on their behalf. A court may only consider a motion brought by a defendant if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Seventh Circuit has stated that this exhaustion requirement is a mandatory claim-processing rule that must be enforced when invoked. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). And, because the exhaustion requirement is statutory in nature rather than judicially created, contrary to Mr. Gay's assertion (Doc. 471 at 7-8; Doc. 477 at 5-6), equitable judicial doctrines that otherwise excuse exhaustion do not apply. *See United States v. Cox*, 455 F. Supp. 3d 830, 833-34 (S.D. Ind. 2020) (explaining the problem with applying judge-made exceptions to statutory exhaustion requirement); *United States v. Lohmeier*, JJT-12-1005, 2020 WL 2836817, at *2 (N.D. Ill. June 1, 2020) (same).

Mr. Gay argues that he exhausted his administrative remedies (Doc. 471 at 7; Doc. 477), pointing to a letter dated May 14, 2024, in which a BOP counselor indicated in a memorandum

that he "personally routed a request for compassionate release for Inmate Gay, Anthony Reg. No. 23170-026." Doc. 477-1 at 2. The Government asserts that this letter does not establish exhaustion (Doc. 476 at 7-8), because five days later a BOP Unit Manager responded to Mr. Gay asking that he complete an application for compassionate release. Doc. 476-1. Instead, the Government avers that Mr. Gay still has yet to fully exhaust his administrative remedies (Doc. 476 at 8-9), asserting that Mr. Gay first requested relief on July 30, 2024 (Docs. 471-3, 471-4), and the Warden denied the request on August 6, 2024, while indicating that Mr. Gay still has available avenues of administrative relief. Doc. 476-2.

The Court notes that the Government assumes, without citing to any authority, that the "burden of satisfying the statutory exhaustion requirement" falls on Mr. Gay. Doc. 476 at 7 n.1. Yet, it is not so patently obvious as to who carries the burden on exhaustion. Some district courts, in analogizing compassionate release exhaustion to the exhaustion requirement under the Prison Litigation Reform Act ("PLRA"), hold that exhaustion is an affirmative defense and so the burden lies with the government to show that the defendant failed to exhaust his administrative remedies. *See, e.g., United States v. Whitenack*, CB-19-1787, 2023 WL 6627821, at *2 (S.D. Cal. Oct. 10, 2023); *United States v. Cardena*, 461 F. Supp. 3d 798, 802 (N.D. Ill. 2020). Other district courts indicate that it is the defendant's ultimate burden to show he is entitled to compassionate release, and that includes not only a showing of extraordinary and compelling reasons but also proving that he exhausted his administrative remedies. *See, e.g., United States v. Poole*, 472 F. Supp. 3d 450, 455 (W.D. Tenn. 2020); *United States v. Van Sickle*, JLR-18-250, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020); *United States v. Hudson*, LMA-10-329, 2020 WL 5802417, at *2 (E.D. La. Sept. 29, 2020).

This Court agrees with the former approach, in large part because the Seventh Circuit has clearly analogized the exhaustion requirement for compassionate release to that under the PLRA. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Implicit in the Seventh Circuit's holding is that the government bears the burden of establishing that a defendant has failed to exhaust his administrative remedies. This should come as no surprise, as "[b]urdens of proof generally fall on the party with better access to the information." *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 619 (N.D. Ill 2022) (citing *Schaffer v. Weast*, 546 U.S. 49, 60 (2005)), and the government is better suited to establish that a defendant has not requested relief with the BOP. Indeed, the Court is hard-pressed to imagine a scenario where an inmate, as opposed to an Assistant United States Attorney, has easier access to BOP records.

Despite this ease of access, the Court is troubled that Mr. Gay's proffered letter of May 14, 2024, was summarily discounted by the Government. The Government argues that the letter of May 19, 2024, raises an implication that the May 14, 2024, letter was only a request for a compassionate release application, but the record is not so clear on that point. The May 14, 2024, letter clearly stated that the BOP counselor was forwarding a request for compassionate release, not an application for compassionate release. Given that it is the Government's burden to show Mr. Gay did not exhaust his administrative remedies, and the Government failed to provide any substantiating evidence in support of its position, the Court can only conclude that Mr. Gay, for the purposes of the Motion, has exhausted his administrative remedies.

Accordingly, the Government's motion to dismiss for failure to exhaust (Doc. 476) must be DENIED. And so, the Court turns to whether Mr. Gay's dire health situation warrants compassionate release.

## COMPASSIONATE RELEASE

18 U.S.C. § 3582(c)(1)(A) authorizes a district court to reduce a defendant's term of imprisonment, commonly referred to as compassionate release, upon a finding that (1) extraordinary and compelling reasons warrant release; and (2) a reduction is consistent with the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Cochran*, 833 F. App'x 5, 8-9 (7th Cir. 2020).[1] Unlike exhaustion, a defendant bears the burden of showing that extraordinary and compelling reasons warrant release. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). In considering a reduction in sentence, the Court is to consider the United States Sentencing Guidelines ("USSG") policy statements, which apply to § 3582(c)(1)(A) sentence reductions.[2] Of relevance here, USSG §1B1.13(b)(1) provides that "[e]xtraordinary and compelling reasons exist" when the defendant is suffering "from a terminal illness" or "a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care…"

The Court recognizes the possibility that a hearing would more fully flush out Mr. Gay's most recent medical condition, diagnosis, prognosis, and/or impending death, but a hearing would require continuing this matter at the very least for a few more days. If the Court were to wait for such information before ruling on the Motion, it is plausible that in the interim Mr. Gay would unnecessarily die alone in the BOP's custody, without the company of his family. Thus, the Court takes this unusual step of deciding this matter on the briefs, and in doing so, relies on the

---

[1] Section 3553(a) lists a series of considerations including that the sentence reflects the seriousness of the offense, has a deterrent effect, and protects the public from future crimes.

[2] Under 28 U.S.C. § 994(a)(2)(C) the Sentencing Commission is required to promulgate general policy statements regarding the appropriate use of § 3582(c).

representations of defense counsel, an officer of the court, the affidavit of Dr. Neely, and the lack of countervailing medical records from the Government.

As discussed above, Mr. Gay proffered medical records that indicate he is suffering from aggressive cancer that has caused his health to suffer a precipitous decline. And, as relayed by defense counsel, Mr. Gay's sister observed during a visit on August 12, 2024, that Defendant's medical condition remains severely guarded, that he has additional difficulties, including with his heart, and that he is verbally nonresponsive. Further, Mr. Gay's medical claims are corroborated in the Warden's letter of August 6, 2024, which concedes that Mr. Gay has "a medical diagnosis and [his] life expectancy trajectory prediction is less than 18 months." Doc. 476-2. This evidence is sufficient for Mr. Gay to establish his burden of showing that extraordinary and compelling reasons warrant his immediate release.

Although the Government is in a better position to learn of Mr. Gay's present condition, it has not provided updated medical records or otherwise contradicted any of Mr. Gay's claims that relate to the seriousness of his medical condition. *See* Doc. 477 at 7-8. Instead, the Government asserts that, "the defendant's health situation is uncertain and continues to evolve" and that by dismissing the Motion and postponing a decision, "the Bureau of Prisons, the parties, and this Court will all be in a better position to assess the defendant's long term health prognosis." Doc. 476 at 10. The evidence before the Court shows that Mr. Gay's health situation is certain; he is suffering from aggressive cancer, and he may pass away very soon. The Government's bare assertions are insufficient to make a showing to the contrary. Thus, the Court turns to whether Mr. Gay's release would be consistent with the § 3553(a) factors.

The Court is not blind to Mr. Gay's criminal history or otherwise problematic past conduct. This Court was fully aware of these factors when imposing Mr. Gay's sentence. However, the

Court did not sentence Mr. Gay to die alone in the BOP's custody. And the Court could not have possibly foreseen the unfortunate health issues that now plague Mr. Gay. Furthermore, Mr. Gay is not well enough to pose a threat or danger to society, and immediate release, given the severe nature of Mr. Gay's condition, would not undermine the seriousness of the offense or weaken any deterrent effect. Additionally, the Court takes seriously Mr. Gay's representation that he "has a release plan in place" that will permit "him to receive palliative care with the support of his family and friends in Rock Island." Doc. 471 at 14. Therefore, the Court concludes that the § 3553(a) factors weigh in favor of Mr. Gay's immediate release.

### CONCLUSION

In light of the foregoing, the Motion (Doc. 469) is GRANTED. Mr. Gay shall be immediately released from the BOP's custody. Because of Mr. Gay's impending release, his motion for visitation (Doc. 474) is DENIED as moot. And, as noted, the Government's motion to dismiss (Doc. 476) is DENIED.

Entered this 14th day of August 2024.

s/ James E. Shadid
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE